## CRAVENS v. UNITED STATES.
### No. 49374.

United States Court of Claims.
Feb. 5, 1952.

Burr Tracy Ansell, Washington, D. C., for plaintiff.

Bruce G. Sundlun, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., R. W. Koskinen, Washington, D. C., on the brief for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff in this case is the widow, and executrix of the estate of, William M. Cravens, deceased, who at the time of his death on January 24, 1947, held the grade of colonel in the United States Army, and who was at that time a resident of Garland County, Arkansas. Colonel Cravens had enlisted in the Army on March 22, 1915, and had accepted an appointment in the Regular Army on December 2, 1916.

He held a commission in the Army from that time until the date of his death.

On June 19, 1946, Colonel Cravens appeared before an Army Retiring Board at Letterman General Hospital, Presidio of San Francisco, California, and was found to have been permanently incapacitated for active service by reason of certain physical incapacities resulting as an incident of service. He thereupon returned to Fort Douglas, Utah, his duty station, on sick leave from Letterman General Hospital, in order to await action upon the Retiring Board Proceedings. He was ordered to return to Letterman on July 16, 1946, where on August 2, 1946, a biopsy and deep dissection was made for metastatic cancer in the lymph glands of his neck.

Colonel Cravens was granted thirty days' sick leave, commencing August 10, 1946, by special orders from the hospital dated August 8, 1946, and he left to visit friends and relatives at Camp McQuade and Los Angeles, California. On August 22, 1946, he returned to the hospital for a checkup; and on that date the Commanding General at the hospital forwarded to him by indorsement letter orders signed by the Adjutant General, dated August 9, 1946, granting him eighty-three days' terminal leave effective August 10, 1946, and notifying him that it was contemplated announcing his retirement effective October 31, 1946, upon the completion of his terminal leave, as a result of the War Department's review of the Retiring Board proceedings.

Colonel Cravens immediately returned to his duty station at Fort Douglas, and on August 29, 1946, by indorsement upon the letter orders, protested to the Adjutant General his contemplated retirement effective October 31, 1946, on the ground that his accrued leave credit, assuming the commencement of terminal leave on August 10, 1946, would not have permitted his retirement before November 30, 1946, and he requested that November 30, 1946, be made the effective date of his retirement. By the same indorsement he protested his being charged with terminal leave from August 10 to August 22, 1946, while on sick leave.

He was advised by the Adjutant General on September 11, 1946, that although he had an accrued leave credit of ninety-two days, only eighty-three days from August 10, 1946, had been granted "in order to effect his retirement at the end of the month." The acting Adjutant General by letter dated September 11, 1946, denied Colonel Cravens' request to be retired effective November 30, 1946.

Colonel Cravens left Fort Douglas for his home at Fort Smith, Arkansas, about September 29, 1946. While traveling the condition of his neck became worse, and on October 8, 1946, he was taken to the Army and Navy General Hospital at Hot Springs, Arkansas, where he was admitted as a patient the same day. As a patient in the hospital from that time until December 13, 1946, he received continuous and intensive treatment for cancer of the tongue and neck. He returned home over the holidays, and his condition worsened. He was taken back to Army and Navy Hospital on January 21, 1947, in a dying condition, and three days later on January 24, 1947, he died of a perforated gastric ulcer and cancer of the neck.

While Colonel Cravens had been a patient at Army and Navy General Hospital on October 25, 1946, the United States Army Chief of Staff, by order of the Secretary of War, issued Special Orders No. 230, which announced the retirement of Colonel Cravens effective October 31, 1946, under Section 1251 of the Revised Statutes, 10 U.S.C.A. § 933. After the death of Colonel Cravens, in reply to an inquiry by the plaintiff as to the decedent's status, the Adjutant General on February 11, 1947, stated that the retirement orders could not be amended or revoked, as his retirement had been properly effected as required by law, and retroactive orders were illegal.

Plaintiff's claim here is based upon the proposition that Colonel Cravens at the time of his death was still on active duty with the Army and had never been legally retired. The orders dated August 9, 1946, placing Colonel Cravens on terminal leave did not purport to retire him, but merely stated that his retirement for physical disability, effective October 31, 1946, was con-

templated. The only orders ever purporting by their own terms to retire Colonel Cravens from active duty were those issued on October 25, 1946, Special Orders No. 230, which did announce his retirement effective October 31, 1946. It is the validity and effect of Special Orders No. 230 which must be determined by this court.

Prior to September 1, 1946, the War Department's procedure for administration of terminal leave provided for in AR 605–115, dated November 9, 1945, and change orders to that regulation, was set forth in WD Circular 116, dated April 20, 1946. Circular 116 provided generally that where an officer was admitted to an Army hospital while on terminal leave, after receipt of the required notification from the admitting hospital, the officer's orders were to be rescinded insofar as they pertained to the unexpired portion of terminal leave and also as to the date of his separation from active service. There were in Circular 116, however, certain specific exceptions from the operation of that general provision, including an exception in the instance of Regular Army active list officers scheduled for retirement due to physical disability, such as was Colonel Cravens. This exception to Circular 116 provided that such an officer would continue on terminal leave while hospitalized, and his retirement would become effective as previously ordered.

On August 26, 1946, AR 600–115 was issued by the War Department, to become effective on September 1, 1946. AR 600–115 expressly superseded AR 605–115, the basic regulation to which Circular 116 had been issued as a supplement. As did Circular 116, the new regulation, AR 600–115, provided in part that where military personnel were hospitalized while on leave prior to separation from active duty, the fact of admission to an Army hospital would automatically rescind that part of their orders which prescribed a date of separation from active duty. And it had a similar provision with respect to suspension of terminal leave during the period of of hospitalization. Unlike Circular 116, however, AR 600–115 omitted the exception noted above which had been contained in Circular 116. Indeed all but one of the specific exceptions contained in Circular 116 were omitted from AR 600–115, and that one, concerning individuals awaiting retirement because of statutory age, is not material here.

█ It is defendant's position that Circular 116 rather than AR 600–115 is controlling here, and that because "Circular 116 dealt with a specific class of officers (retired Regular Army officers and Regular Army active list officers scheduled for retirement) whereas AR 600–115 dealt with military personnel in general" the two are not irreconcilable. With this we cannot agree. AR 600–115 embraces Colonel Cravens' situation just as completely as did Circular 116, and the regulation being subsequent in point of time must be considered to have repealed any conflicting portions of the circular.

Defendant also cites WD Circular 271, dated September 6, 1946, to show that the War Department did not consider that Circular 116 had been repealed by AR 600–115. It is not necessary to hold that Circular 116 had been repealed in its entirety, but only to the extent inconsistent with AR 600–115. We attribute to Circular 271 no effect material to this case. Circular 116 had cited the superseded "AR 605–115" in several places. Circular 271 merely changed those and certain other citations to "AR 600–115," and in no respect whatsoever purported to change AR 600–115.

█ Thus it was an unmodified AR 600–115, so far as this case is concerned, in effect on October 8, 1946, when Colonel Cravens entered the Army and Navy General Hospital at Hot Springs, Arkansas. There is no question here but that Colonel Cravens was on terminal leave orders at that time. By the terms of AR 600–115 then, the fact of Colonel Cravens' admission to the hospital would have automatically rescinded so much of his orders as prescribed the date of his separation from active duty. But as has been pointed out, on October 8, 1946, when Colonel Cravens was admitted to the hospital, there

were no orders prescribing any date of separation from active duty. The "fact of admission" did indeed rescind his orders dated August 9, 1946, in so far as they pertained to his unexpired portion of terminal leave, but there was no prescribed date of separation contained in those orders which could be rescinded on October 8, 1946, by the fact of admission. There were only statements that it was "contemplated" to retire Colonel Cravens. Thus we believe the Special Orders No. 230, dated October 25, 1946, purporting to retire Colonel Cravens on October 31, 1946, were in no way subject to the operation of AR 600–115 since they were issued *after* he was admitted to the hospital on October 8, 1946, and AR 600–115 by its terms could apply only to orders issued prior to admission to the hospital. Thus Special Orders No. 230, representing the exercise of authority contained in R.S. 1251 to retire an officer for physical disability, were unaffected by AR 600–115, and Colonel Cravens was validly retired effective October 31, 1946. For that reason recovery of the amounts specifically sought here by plaintiff must be denied.

■ If the provisions involved were purely statutory, a different question may have been presented. But plaintiff is claiming a rescission of the retirement orders by virtue of the terms of a previous regulation. The same authority that has issued a regulation may at any time rescind, repeal, or suspend its operation, or may issue a new one so long as the action taken is within the framework of the authorizing statute.

The retirement orders dated October 25, 1946, issued by the same authority with full knowledge of AR 600–115 had the effect in so far as Colonel Cravens was concerned, of superseding from that date any part of that regulation which may have conflicted with such orders. Section 1251 of the Revised Statutes reads as follows: "When a retiring board finds that an officer is incapacitated for active service, and that his incapacity is the result of an incident of service, and such decision is approved by the President, said officer shall

be retired from active service and placed on the list of retired officers."

It was pursuant to the statutory authority vested by that section that Colonel Cravens was retired.

We reach this conclusion reluctantly. Perhaps there were other considerations not disclosed by the record. At any rate the statutory authority to issue such orders was clear.

But it appears to the court that at the time of his retirement on October 31, 1946, Colonel Cravens did have an unused leave credit. In Terry v. United States, 97 F. Supp. 804, 101 F.Supp. 165, 120 Ct.Cl. ——, we denied recovery for such leave to a retired officer whose temporary reappointment was terminated returning the officer to retired status on October 11, 1946, at a time when he still had an unused leave credit. The basis for that holding was that under Section 3(a) of the Armed Forces Leave Act of 1946, 60 Stat. 963, 37 U.S.C. A. § 31a(a), Terry had a right to carry forward that leave credit to another period of active duty. Having that right Terry was not finally deprived of his leave credit by his return to the retired list on October 11, 1946.

It must be noted, however, that Terry's separation from active duty in October 1946, was not for reason of permanent physical incapacity, as was Colonel Cravens'. The latter was being retired from active service because he was no longer physically capable of performing active duty, and in the judgment of the Army Retiring Board and the War Department, that incapacity was permanent. Therefore it could not be said in Colonel Cravens' case that he might ever have a future period of active service to which to carry forward that leave credit. In a very real sense Colonel Cravens was being finally deprived by his retirement of his right to the accrued leave.

■ We do not think that the War Department should on one hand say to a man that he is being retired because he has a permanent disability and is unfit for active service, and on the other hand be allowed

at the same time to deny the man time or compensation for his accrued leave on the ground that his disability may not be permanent and he may be recalled to active duty at some time in the future. We conclude therefore that his retirement effective October 31, 1946, did deprive Colonel Cravens of his rights under the Armed Forces Leave Act of 1946, supra, for which he should have been compensated.

And we believe plaintiff succeeds to that right to compensation. There was no express requirement in the 1946 Act, supra, for payment only to a *living* member or former member of the Armed Services, such as there was in the 1947 amendment to Section 4(c), 61 Stat. 748, 37 U.S.C.A. § 33(c). Nor is there anything in the 1946 Act prohibiting payment for such leave to a member retired with pay, such as there was in Section 2 of the 1947 Act, 61 Stat. 749. We do not believe the 1947 Act should operate to divest rights previously vested under the 1946 Act. Having determined that the rights here in question vested in Colonel Cravens on October 31, 1946, and passed by his death to plaintiff prior to the passage of the 1947 Act, we think plaintiff should recover for that leave accruing to Cravens on October 31, 1946, for which he received neither leave time nor compensation.

It remains then only to determine the amount of that leave. Colonel Cravens' terminal leave orders were effective to place him on terminal leave on August 22, 1946, the day he received the terminal leave orders, and plaintiff is entitled to recover for 92 days' leave (admitted by the Adjutant General to be due Colonel Cravens as of October 31, 1946), less the time actually spent on terminal leave between August 22, 1946, and October 8, 1946, the day he was admitted to the hospital—a difference of 45 days.

Plaintiff should therefore recover $1,068.00, for the 45 days' pay and allowances due Colonel Cravens on October 31, 1946.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.