Darrell G. HAFEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–59L.

United States Court of Federal Claims.

Feb. 17, 1994.

Darrell G. Hafen, pro se.

Stuart B. Schoenburg, Washington, DC, with whom was Acting Asst. Atty. Gen. Miles Flint, for defendant.

## OPINION

FUTEY, Judge.

This matter is before the court on cross-motions for summary judgment. Plaintiff's *pro se* complaint alleges that his property interest has been taken without just compensation in violation of the Fifth Amendment of the United States Constitution. Defendant counters that plaintiff has not asserted a valid property interest for which compensation should be made.

## Facts

Plaintiff, Darrell G. Hafen, maintains that he was the owner of 5,120 acres of placer mining claims within the boundaries of Death Valley National Monument. Death Valley, is under the supervision of the Director of the National Park Service of the Department of the Interior, and was established on February 11, 1933, by Presidential Proclamation (Presidential Proclamation No. 2028 of February 11, 1933, 47 Stat. 2554), as expanded on March 26, 1937, by Presidential Proclama-tion (Presidential Proclamation No. 2228 of March 26, 1937, 50 Stat. 1823).

Title 16 U.S.C. § 447 (repealed 1976), provided for the establishment of mining claims in Death Valley. In an effort to preserve the natural environment, Congress in 1976, repealed that section, and enacted the Mining in the Parks Act (MPA), Pub.L. No. 94–429, 90 Stat. 1342 (1976), 16 U.S.C. § 1901 *et seq* (1993). Subject to valid existing rights, the MPA prohibits the exploration, mining and purchase of all mineral deposits within the National Park System.

Pursuant to 16 U.S.C. § 1902 of the MPA, the Secretary of the Interior may promulgate regulations governing "activities resulting from the exercise of valid existing mineral rights of patented or unpatented mine claims...." Those regulations can be found in 26 C.F.R. Part 9.

The MPA required that all mining claims, within the boundaries of units of the National Park System, be recorded with the Secretary of the Interior within one year from enactment, *i.e.*, by September 28, 1977. Plaintiff recorded his claims with the Department of the Interior by September 26, 1977, in the name of the Imperial Gold Corporation.[1] Under the MPA, 16 U.S.C. § 1905, the Secretary of the Interior was required to determine the validity of unpatented mining claims in Death Valley National Monument within 2 years of the date of the Act.

On June 28, 1978, the Bureau of Land Management (BLM) issued a complaint contesting the validity of plaintiff's mining claims. The complaint was served upon the Imperial Gold Corporation, through its president, the plaintiff in this action, Mr. Hafen. The matter was heard on December 9, 1980, in Salt Lake City, Utah. On August 10, 1981, the United States Department of Interior Administrative Law Judge found that the claims were invalid. This decision was appealed to and affirmed by the Interior Board of Land Appeals (IBLA).

This adverse IBLA ruling exhausted plaintiff's administrative remedy and constituted a

---

1. Mr. Hafen claims to be the sole owner of Imperial Gold Corporation. Therefore, the court has permitted him to proceed *pro se.*

final agency action reviewable by a district court under the Federal Question Statute. *See,* 28 U.S.C. § 1331 (1994); 16 U.S.C. § 1910; and Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1993). Plaintiff, however, has apparently elected to bypass district court review, in spite of the fact that the MPA provides jurisdiction to any United States district court to consider claims to "recover just compensation" for losses which constitute "a taking of property under the Constitution." 16 U.S.C. § 1910. Nonetheless, plaintiff has asserted money damages ($10,000,000.00) for a government taking without just compensation, under the Fifth Amendment, which is ordinarily a claim that can be exclusively asserted in this court.

## Discussion

### I. *Summary Judgment*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS,* 998 F.2d 979 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988); *Jay,* 998 F.2d at 982. If the moving party demonstrates an absence of genuine issues of material fact, then the burden shifts to the non-moving party to show that a genuine factual dispute does exist. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

The court must resolve any doubts about factual issues in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); *Litton Industrial Products Inc. v. Solid State Systems Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *Jay,* 998 F.2d at 982; *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818 (1985).

The fact that both parties have moved for summary judgment, does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988). Summary judgment will not necessarily be granted to one party or another, just because both parties have moved for summary judgment. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (*citing LewRon Television, Inc. v. D.H. Overmeyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). A cross-motion is a party's claim that it alone is entitled to summary judgment. It does not follow, however, that if one motion is rejected the other is necessarily supported. The court must evaluate each party's motion on its own merit, and resolve all reasonable inferences against the party whose motion is under consideration. *Corman,* 26 Cl.Ct. at 1014.

Although this case is before the court on cross-motions for summary judgment, the following analysis makes clear that it would be more appropriate to treat this matter as a motion to dismiss for lack of subject matter jurisdiction. Even though no motion to dismiss has been filed by the government, a trial court is obligated "to notice on its own motion the want of its own jurisdiction." *Carter v. United States,* 15 Cl.Ct. 753, 756 (1988) (citing *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988). The court, therefore, is obligated, *sua sponte,* to dismiss this action for lack of subject matter jurisdiction.

Essentially, plaintiff is asking this court to consider his taking claim, in spite of the IBLA's prior adjudication of his ownership rights. Plaintiff's theory of a Fifth Amendment taking must depend on a determination that he has a compensable interest in the unpatented placer mining claims. *Freese v. United States,* 221 Ct.Cl. 963, 1979 WL 10420 (1979). A mining claim on public lands is a unique form of property. It is a possessory interest in land that is "mineral in character" where discovery "within the limits of the claim" have been made. *Cameron v. United States,* 252 U.S. 450, 456, 40 S.Ct. 410, 411, 64 L.Ed. 659 (1920). The established test to determine validity of a mining claim is that it must be of such a character that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." *Chrisman v. Miller,* 197 U.S. 313, 322, 25 S.Ct. 468, 470, 49 L.Ed. 770 (1905); *Cameron,* 252 U.S. at 459, 40 S.Ct. at 412. In order to qualify for a patent, the applicant must show that "the claim is valuable for minerals." *Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 336, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963).

Plaintiff's mining claims, however are unpatented, which means that the title to the land in controversy still belongs to the United States.[2] *Best,* 371 U.S. at 336, 83 S.Ct. at 382. Nevertheless, the claims will still be valid against the United States "if there has been a discovery of mineral within the limits of the claim, if the lands are still mineral, and if other statutory requirements have been met." *Id.; Cameron,* 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659. The determination of the validity of claims against the public lands has been entrusted to the Department of the Interior since its creation in 1849. 43 U.S.C. § 1457 (1993). The Department has plenary authority over the administration of public lands, which includes mineral lands. Moreover, it has been given broad authority to issue regulations concerning them. *See,* 30 U.S.C. § 22 (1993); 43 U.S.C. § 1201 (1992); 16 U.S.C. § 1902.

If a mining claim is found to be valid, the claimant gains certain exclusive possessory rights. No right, however, arises from an invalid claim of any kind. *Best,* 371 U.S. at 335, 83 S.Ct. at 381–82. Although, the Department of Interior cannot arbitrarily revoke a mining claim, it can, however, after proper notice and upon adequate hearing, declare it null and void if the claim is found to be invalid. *Cameron,* 252 U.S. at 459–60, 40 S.Ct. at 412.

When dealing with *pro se* plaintiffs, such petitioners are "entitled to minimal latitude in the presentation and preservation of their rights." *Brown v. United States,* 22 Cl.Ct. 211, 212 (1990) (*quoting Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court of Federal Claims and its predecessor, the Court of Claims, have historically given significant leeway to *pro se* plaintiffs. As was noted in *Clinton v. United States,* 191 Ct.Cl. 604, 423 F.2d 1367 (1970): "The right of persons to represent themselves is well recognized as is also the practical impossibility that such persons can be expected to prepare pleadings according to the formal requirements that can be demanded of attorneys, no matter how many times they try." *Id.* at 605, 423 F.2d 1367. In this case, however, plaintiff did participate in an administrative hearing process. He had a hearing before an administrative law judge and appealed that adverse decision to the IBLA. This is not the first time this issue has been presented to the Court of Federal Claims (and its predecessor court) and plaintiff's *pro se* status cannot save him from the well established precedent of this court declining jurisdiction to review these administrative determinations. *Aulston v. United States,* 11 Cl.Ct. 58 (1986), *aff'd in part and vacated in part, Aulston v. United States,* 823 F.2d 510 (1987); *Freese v. United States,* 221 Ct.Cl. 963, 1979 WL 10420 (1979); *Dawson v. United States,* 113 Ct.Cl. 82, 81 F.Supp. 1021 (1949).

Although plaintiff has couched his complaint in the terms of a "taking," he is, in reality, asking the court to overturn the decision of the IBLA, and this we cannot do. In order for the court to determine if a taking

---

**2.** If a claim is patented, title to the land itself vests in the individual entity.

has occurred, plaintiff must demonstrate a right to ownership of the placer mining claims. In light of the IBLA's decision, however, plaintiff has no valid existing right.

The question of validity of the mining claims was considered, and, although plaintiff received an adverse decision, he benefitted from a full adjudicative process by a board empowered to decide these issues for the Department of the Interior.

> Such an adjudication is determinative of the rights in issue and is binding upon the parties unless reviewed and reversed by a court of competent jurisdiction. Therefore, without a previous test of validity under the Administrative Procedure Act, the correctness of the administrative action must be taken as a given in this Tucker Act suit.

*Aulston,* 823 F.2d at 513 (agreeing with court's finding in *Aulston v. United States,* 11 Cl.Ct. 58, 62 (1986), vacated, but affirmed on merits of opinion).

As noted by the Federal Circuit in *Aulston,* the IBLA decision exhausts plaintiff's remedies and constitutes a final agency decision. Although judicial review of the IBLA determination is not precluded, that authority is vested in the district court not the Court of Federal Claims. *Id.* at 513.

■■■ The instant case is controlled and falls squarely in line with the decisions in *Dawson v. United States,* 113 Ct.Cl. 82, 81 F.Supp. 1021 (1949); *Patterson v. United States,* 115 Ct.Cl. 348, 1950 WL 5010 (1950); and *Freese v. United States,* 221 Ct.Cl. 963, 1979 WL 10420 (1979). In each of these cases the plaintiff came to this court asserting a taking claim after receiving an adverse decision in a prior administrative action. In each case, this court found that the matter in suit was beyond our power to decide.

> Congress has chosen to place authority to review these decisions of the Secretary of the Interior in the United States District

Courts. *See,* Administrative Procedure Act, 5 U.S.C. §§ 701–06 [1993].... For this court to undertake a review of the validity of the claims declared void by the Interior Department would be to assume a function lodged elsewhere by Congress and never contemplated for this court....

*Aulston,* 823 F.2d at 514 (*quoting, Freese v. United States,* 221 Ct.Cl. at 964–65), 1979 WL 10420. This still stands true, even though this court would ordinarily have jurisdiction to consider a taking claim. *Id.* at 514.[3]

### Conclusion

For the reasons stated above this matter must be dismissed for lack of subject matter jurisdiction. Accordingly, the Clerk is directed to dismiss the complaint. No costs.

---

**3.** To the extent that plaintiff is asserting a taking by the mere passage of the Mining in the Parks Act (MPA), Pub.L. No. 94–429, 90 Stat. 1342 (1976), 16 U.S.C. § 1901 *et seq.,* the statute of limitations to consider that claim has expired. Under the Tucker Act, a taking claim must be filed within 6 years after the claim accrues. 28 U.S.C. § 2501 (1993). The MPA was enacted in September of 1976; therefore, if plaintiff is basing his claim on its mandate, the accrual period would have begun 17 years ago. Thus, a taking claim based on the passage of the MPA would be barred by the statute of limitations.